RECEIVED

AUG 1 4 2002

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | ) |
| | ) Civil Action No.: |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| BOARD OF ELECTION COMMISSIONERS | ) |
| FOR THE CITY OF ST. LOUIS, and | ) |
| each individual member of the | ) 4:02CV001235 CEJ |
| Board of Election Commissioners | ) |
| for the City of St. Louis in | ) |
| his or her official capacity; | ) |
| CITY OF ST. LOUIS, MISSOURI, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**STIPULATION OF FACTS AND CONSENT ORDER**

The United States of America filed this action on August 14, 2002, pursuant to Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. 1973gg-6, and pursuant to Section 11(a) of the NVRA, 42 U.S.C. 1973gg-9(a).

The United States' Complaint alleges that the placement of eligible voters on inactive status by the Board of Election Commissioners for the City of St. Louis, when combined with the election-day procedures that inactive voters were required to follow in order to restore their active voter status and vote during the November 2000 and March 2001 elections, constituted a removal of those voters from the voter registration rolls in violation of Section 8 of the NVRA.

Prior to the filing of this complaint and consent order, all defendants, and in particular the Board of Election Commissioners for the City of St. Louis, demonstrated a high level of cooperation with the United States and a strong commitment to ensuring fair and efficiently run elections in the City of St. Louis.

The United States, Defendants Board of Election Commissioners for the City of St. Louis and the City of St. Louis, through their counsel, have conferred and agree that this action should be settled without the delay and expense of litigation.  Accordingly, the United States and the defendants have entered into the following factual stipulation and consent order as an appropriate resolution of this action:

## STIPULATION OF FACTS

1.   Defendant City of St. Louis is a political subdivision of the State of Missouri.  The City of St. Louis is the primary budget authority for Defendant Board of Election Commissioners and is responsible for determining the Board's total annual budget allocation and disbursing operating funds to the Board.

2.   Defendant Board of Election Commissioners (hereinafter "Board of Elections" or "Board") serves as the primary election authority for the City of St. Louis, and is responsible for the conduct and administration of elections in the City of St. Louis.  Each of the Board's individual members has been sued in his or her official capacity.  See Fed. R. Civ. P. 25(d)(2).

3.   The Board's responsibilities include, but are not limited to, the registration of voters in the City of St. Louis, the maintenance of the official list of registered voters in the city, and conducting the casting and counting of ballots.

4.   Between January 1994 and May 2001, the Board conducted a series of mail canvasses of its voter registration rolls.

5.   None of the mail canvasses conducted by the Board between January 1994 and May 2001 included any of the notices required by Section 8(d)(2) of the NVRA, 42 U.S.C. 1973gg-6(d).

6.   In reliance upon the mail canvasses that it conducted between January 1994 and May 2001, the Board designated as "inactive" any registered voter for whom a mailing was returned by the United States Postal Service as "Attempted-Not Known," "Not Deliverable as Addressed," "Forwarding Order Expired," or otherwise not deliverable.

7.   For all elections it conducted between January 1994 and May 2001, the Board did not include any voter whom it had designated as "inactive" on the list of eligible registered voters it provided to precinct election judges.

8.   The voting procedures enforced by the Board require that any person whose name does not appear on the precinct-level list of active registered voters can cast a ballot on election day only if: 1) an election judge at the voting precinct obtains authorization, either by telephone or in writing, from an official at the Board's downtown headquarters; or 2) the voter appears in person at the Board's headquarters and is permitted to cast a ballot there.

9.   For all of the elections it conducted between January 1994 and May 2001, the Board made no effort to notify inactive voters that their registration status had changed, that their names would not appear on the voter registration lists provided to election judges in each voting precinct, or that they would face additional administrative steps on election day before they would be permitted to vote.

10.   By the time of the November 7, 2000, federal general election, the Board had designated as inactive more than 54,000 registered voters in the City of St. Louis, an increase of over 52,000 registered voters since the November 5, 1996, federal general election.

- 4 -

11.   Voter turnout in the City of St. Louis for the November 2000 general election (125,230 ballots cast for President of the United States) was not unusually high by comparison with either the 1992 general election (147,404 ballots cast for President) or the 1996 general election (122,003 ballots cast for President).

12.   During the November 2000 general election, election judges throughout the City of St. Louis instructed voters to go to the Board's headquarters at 300 North Tucker Boulevard because they were unable to contact the Board (due to busy signals or lack of access to working telephones) to verify the registration status of persons whose names were not in the precinct-level lists of active registered voters.

13.   Over 300 eligible inactive voters were able to obtain authorization to vote in the November 2000 general election only after they personally appeared at the Board's downtown headquarters.

14.   It was reported that the Board's downtown headquarters was filled to overflowing during the November 2000 general election.

15.   The Board was unable to process a significant number of persons who appeared at the Board's downtown headquarters during the November 2000 general election.

16.   Certain eligible but inactive voters were unable to vote in the November 2000 general election because there were insufficient phone lines, staff, and other infrastructure to enable those voters to complete the verification procedures employed by the Board on election day.

17.   During the March 2001 municipal primary election in the City of St. Louis, the Board provided additional cellular phones to election judges and opened additional phone lines to its downtown headquarters to handle phone calls from election judges who would be calling to verify the registration status of voters whose names did not appear in the precinct-level lists of active registered voters.  Despite these efforts, election officials at the Board's downtown headquarters were unable to keep pace with the calls they received from election judges.

18.   The lack of adequate resources employed by the Board during the November 2000 federal general election and the March 2001 municipal primary election adversely impacted the completion of adequate verification procedures employed by election officials on election day and prevented a number of eligible inactive voters from being able to reactivate their registration status and cast their ballots.

19.   As of June 1, 2001, the Board had designated as inactive more than 70,000 registered voters in the City of St. Louis.

20.   In June 2001, the Board sent a forwardable mailing to all registered voters in the City of St. Louis who were designated as inactive as of the date of the mailing.   This forwardable mailing contained all notices required by Section 8(d)(2) of the NVRA, 42 U.S.C. 1973gg-6(d).

### FINDINGS AND CONCLUSIONS

Accordingly, on the basis of the preceding stipulated facts and upon the consent of the parties, it is hereby **ORDERED, ADJUDGED AND DECREED** that:

I.   This Court has jurisdiction over this action pursuant to 28 U.S.C. 1345.

II.  Eligible registered voters who had been placed on inactive status by the Board of Election Commissioners for the City of St. Louis (hereinafter "Board of Elections" or "Board") at the time of the November 7, 2000, federal general election were removed from the list of eligible voters within the meaning of Section 8 of the NVRA, 42 U.S.C. 1973gg-6, because, as a result of several factors in combination, it was impossible for them to secure active status in time to vote on election day.  These factors included: 1) the lack of any notice to these voters before election day that they had been placed on an inactive list and thus would be required to complete certain administrative steps before voting; 2) the Board's requirement that eligible inactive voters receive approval from officials at the Board's downtown headquarters prior to voting; 3) election judges' lack of telephone access to the Board's downtown headquarters; 4) the lack of adequate resources at polling places to respond to voters whose names were not on the list of active registered voters; and 5) the lack of adequate resources at the Board's downtown headquarters on election day to respond to election judges by telephone or to voters who appeared in person.  In this case, it is the combination of these factors, and not any one factor standing alone, that constituted a de facto removal under the NVRA.

III.  By agreement of the parties, the Board of Elections, its successors in office, its agents and all persons acting in concert with it shall implement the terms of this Order in order to resolve the United States' claims in this action.

PRE-ELECTION NOTICE PROCEDURES

IV.  The Board of Elections shall initiate a media strategy designed to encourage city residents to verify whether their voter registration status remains active and, if necessary, to contact the Board to reactivate their status well in advance of each election.

V.  At least once during the period 45 to 60 days prior to each election, and at least once within the period between seven (7) and ten (10) days prior to each such election, the Board of Elections shall issue announcements pursuant to Paragraph VI, *infra*, containing the following information:

a)   voters who have changed residences within the City of St. Louis need to notify the Board so that their registration records can be updated;

b)   voters who have not received Notice of Election cards or other mailings from the Board within five (5) days before an election:

1)   may be designated as inactive, and may be removed from the voter rolls if they do not appear to vote in two consecutive federal general elections;

2)   need to contact the Board before election day to verify whether their voter registration status remains active; and

- 9 -

      3)    will be required to complete additional administrative steps prior to casting a ballot if they remain designated as inactive on election day.

VI.  The Board of Elections shall issue the announcements described in Paragraph V, <u>supra</u>, in the print and radio media, including but not limited to the <u>St. Louis Post-Dispatch</u> and the <u>St. Louis American</u>, as well as on at least two radio stations at peak times, including but not limited to KMOX AM 1120 and KMJM FM 104.9.

VII.  Defendant City of St. Louis shall post the notices described in Paragraph V, <u>supra</u>, in a permanent, conspicuous location on the Board of Elections' Internet web page: <u>http://www.stlouiscity.org.</u>

PRE-ELECTION PREPARATIONS

VIII.  Prior to each election the Board of Elections shall determine the number of precincts in which the percentage of inactive voters exceeds 30 percent of all voters in that precinct.  The Board shall assign at least one additional election judge (beyond the statutory minimum) to each precinct in which inactive voters constitute more than 30 percent of all voters (active plus inactive) in that precinct.  This election judge shall be known as the "specialist judge" whose primary responsibility on election day will be to process inactive voters.  See Paragraph XV(a), infra.  In those precincts with an additional election judge (where the total number of judges is an odd number), the specialist judge shall have no voting power or authority to resolve any disputes regarding a voter's qualifications or right to cast a ballot.  The Board of Elections shall take reasonable steps to recruit additional specialist judges as needed.

IX.  Prior to each election the Board of Elections shall ensure that the telephone system at its downtown headquarters is adequate to handle the volume of telephone calls that reasonably can be expected during that election.

X.   Prior to each election the Board of Elections shall ensure that the number of personnel working at its downtown headquarters on election day is adequate to handle the volume of telephone calls that reasonably can be expected during that election, as well as sufficient personnel to serve the number of voters and other individuals who reasonably can be expected to appear at the Board's headquarters during that election.

ELECTION-DAY PROCEDURES

XI.   In order to provide an opportunity for eligible inactive voters to timely cast their ballots, the Board of Elections shall adhere to the election-day procedures and policies described below:

XII.   In August 2002, the Board of Elections chose to initiate the practice of providing at least one fully alphabetized, updated list containing the names of all inactive voters in the city (hereinafter "Citywide Inactive List") to each voting precinct.  So long as the Board maintains such a list, the Board shall continue this practice during the span of this decree.  See Paragraph XXVI(a), infra.

XIII.   For each voting precinct the Board of Elections shall provide specialist judges with the tools necessary to determine the proper voting location for each voter (hereinafter "Polling Place Locator").

XIV.   The Board of Elections shall ensure that the election judges in each voting precinct have ready access to a working telephone (either land-line or cellular).

XV.   Election judges shall employ the following procedures with respect to any person presenting himself or herself to vote whose name does not appear upon the precinct roster of eligible active voters.  Such persons can be classified as follows: (1) eligible, inactive voters who appear at the correct precinct (see subparagraph (e), _infra_), (2) eligible, inactive voters who appear at an incorrect precinct (see subparagraph (f), _infra_), and (3) individuals for whom election judges and/or the Board cannot immediately determine eligibility (see subparagraph (g), _infra_).

   (a)   The Board of Elections shall designate a specialist judge in every voting precinct.  In those precincts where the percentage of inactive voters is greater than 30 percent, the additional judge (beyond the statutory minimum) shall be designated the specialist judge.  _See_ Paragraph VIII, _supra_.  In those precincts where the percentage of inactive voters is less than 30 percent, one of the four (or other statutory minimum number of) existing judges shall be designated the specialist judge.  Specialist judges shall assume primary responsibility for processing inactive voters on election day.

   (b)   When a person appears at a voting precinct and is not listed on the precinct roster of active voters, that voter shall be processed by the specialist judge.

   (c)   When processing a person described in subparagraph (b), _supra_, the specialist judge shall first check the Citywide Inactive List to determine whether the person is an eligible voter.

(d)    The specialist judge shall then consult the Polling
       Place Locator to determine whether the voter is at
       the proper voting location.

(e)    If the voter is listed in the Citywide Inactive List,
       and the voter's current address is served by the
       precinct at which he or she has appeared, the voter
       shall complete the Consolidated Voters Affidavit and
       shall be permitted to cast a full ballot in the same
       manner as all other voters.  See Paragraph XVI, infra
       (discussing amending the Board's existing version of
       the Consolidated Voters Affidavit).

(f)    If the voter is listed in the Citywide Inactive List
       but has appeared at an incorrect precinct, the
       specialist judge shall consult the Polling Place
       Locator and provide the voter with the address of the
       correct precinct or the Board's downtown
       headquarters, whichever is more convenient for the
       voter.  Once at the correct precinct, the voter shall
       be permitted to cast his or her ballot as provided in
       subparagraph (e), supra.

(g)    If the person does not appear in the Citywide
       Inactive List, or if the specialist judge cannot
       otherwise determine the person's eligibility, the
       specialist judge shall first consult the Polling
       Place Locator to determine whether the person is at
       the proper voting location.  If the person is at the
       proper voting location, the specialist judge shall
       then contact the Board of Elections, and if
       authorized by the Board, the person shall be
       permitted to vote in the same manner as all other
       voters.  If the person is not authorized by the Board
       of Elections, or if the specialist judge is unable to
       obtain final authorization by the Board within ten
       minutes, the specialist judge shall offer the person
       the opportunity to cast a provisional ballot to the
       extent that practice is allowed under Missouri
       Revised Statutes § 115.138 (West 2002) (provisional
       voting), or to appear in person at the Board of
       Elections.

(h)    An inactive voter who appears to vote at the precinct serving his or her current address, and who presents a valid Authorization to Vote at Precinct form or other form of written authorization from the Board of Elections, shall be permitted to vote in the same manner as all other voters.

(i)    In the event there is a dispute regarding a voter's address or correct polling place, nothing in this Order shall preclude the specialist judge from offering the voter the opportunity to cast a provisional ballot to the extent that practice is allowed under Missouri Revised Statutes § 115.138 (West 2002) (provisional voting).

XVI.  In consultation with the undersigned counsel for the United States, the Board of Elections shall amend its current Consolidated Voters Affidavit as necessary to conform to the requirements of this Order.

XVII.  During each election the Board of Elections shall record the number of phone calls from election judges that were processed by Board personnel, the number of inactive voters who were authorized to vote on election day, and the number of persons who requested but were not given authority to vote on election day.  These records shall be made available to any party to this action upon request.

XVIII.  The Board of Elections shall ensure that the procedures and policies described above are implemented by preparing training manuals and election forms, distributing such manuals and forms to all election judges, and training all election judges in the above-described procedures.  At least 14

- 15 -

days before distributing these materials, the Board shall provide an advance copy to the undersigned counsel for the United States in order to ensure that such materials are in compliance with the terms of this Order.  Counsel for the United States shall communicate any concerns to the Board within seven (7) days of receiving the materials.  If no concerns are raised in the requisite period, the materials shall be deemed sufficient to meet the terms of this Order.

XIX.   The Board of Elections shall permit attorneys from the United States Department of Justice, Civil Rights Division, Voting Section, to monitor voting procedures inside polling places and inside the Board's downtown headquarters during elections in the City of St. Louis.  The Board shall further permit Department of Justice attorneys to observe the training of election judges prior to elections.

LIST MAINTENANCE PROCEDURES

XX.    Section 8 of the NVRA, 42 U.S.C. 1973gg-6, prohibits the Board of Elections from removing any voters from the list of eligible voters on the basis of the Board's voter canvasses conducted between January 1994 and May 2001, because those mailings did not provide voters with the notices required by Section 8(d)(2) of the NVRA, 42 U.S.C. 1973gg-6(d).

XXI.  The Board, in its discretion, may remove the names of any voters from the voter rolls in accordance with the requirements of the NVRA, but has agreed not to use its June 2001 mailing as the basis for removing voters for failing to vote or appear to vote.

XXII. The Board shall promptly update its records to reflect any changes reflected in the completed Consolidated Voters Affidavit forms.

XXIII.  Once the Board of Elections has determined that an inactive voter is eligible to cast a ballot--either by receiving a telephone call from an election judge or upon examination of the voter's completed Consolidated Voters Affidavit, change-of-address form, or Authorization to Vote at Precinct form--the Board shall promptly change that voter's registration status from inactive to active.

XXIV.  The parties agree that the provisions of this Order are consistent with the laws of the State of Missouri and the City of St. Louis.  To the extent that any provision of this Order may conflict with the laws of the State of Missouri or the City of St. Louis, this Order shall control.

XXV.  Defendant City of St. Louis shall ensure that the city's annual budget allocation to the Board of Elections is sufficient to meet the terms of this Order.

XXVI.  Defendants are committed to taking each of the following actions:

> (a)  The Board of Elections has committed to eliminating the "inactive list" as soon as possible after the November 5, 2002, federal general election, but no sooner than the City of St. Louis' next regular budget allocation in FY 2004.

> (b)  The Board of Elections has committed to achieve its obligations under this Order by providing laptop computers and printers in every voting precinct, training election judges to be proficient in the use of this computer technology, and having this system fully integrated by the August 2004 federal primary election.

> (c)  Defendant City of St. Louis, by and through the Mayor, commits to ensuring that, beginning with the City's next regular budget allocation in FY 2004, the City's annual budget allocation to the Board of Elections shall enable the Election Board to meet the Board's commitment described in subparagraph (b), supra.

The NVRA does not require these actions, and failure to achieve these voluntary commitments shall not render Defendants in noncompliance with Paragraphs I-XXV, <u>supra</u>.

XXVII.  Nothing in this Order shall preclude the Board of Elections from taking additional steps consistent with this Order to ensure that eligible inactive voters are afforded a more meaningful opportunity to timely cast their ballots on election day.

XXVIII.  Nothing in this Order shall preclude the Board of Elections from taking steps consistent with this Order, and consistent with the Board's anti-fraud program, to prevent ineligible voters from casting ballots on election day, nor shall it preclude the Board from referring instances of voter fraud to the proper authorities.

XXIX.  The terms of this decree are intended by the parties to address the particular circumstances present in this case, and do not necessarily represent the procedures required by the NVRA in other cases.

XXX.   The terms of this Order shall become effective upon entry of this Order and shall remain in effect until January 31, 2005.

XXXI.   The United States' Complaint is dismissed.

XXXII.   The parties shall bear their own costs.

XXXIII.   The Court shall retain jurisdiction over this matter until January 31, 2005, in order to enforce the terms of this Order and to provide such other relief as is appropriate.

AGREED IN FORM AND CONTENT:

                              FOR THE PLAINTIFF UNITED STATES
                              OF AMERICA:

RAYMOND W. GRUENDER          RALPH F. BOYD, JR.
United States Attorney       Assistant Attorney General
                             Civil Rights Division
JOSEPH B. MOORE
Assistant United States
    Attorney

                             _____
                             JOSEPH D. RICH
                             ROBERT A. KENGLE
                             MICHAEL A. ZWIBELMAN
                             Attorneys
                             Voting Section
                             Civil Rights Division
                             U.S. Department of Justice
                             950 Pennsylvania Avenue, NW
                             Room 7254-NWB
                             Washington, D.C. 20530
                             (202) 514-6450


                             FOR DEFENDANT CITY OF ST. LOUIS:

                             PATRICIA A. HAGEMAN
                             CITY COUNSELOR


                             _____
                             MARK LAWSON, # 20618
                             Associate City Counselor
                             City of St. Louis
                             314 City Hall
                             1200 Market Street
                             St. Louis, MO  63103
                             (314) 622-3361

FOR DEFENDANT BOARD OF ELECTION
COMMISSIONERS FOR THE CITY OF ST.
LOUIS, AND ITS INDIVIDUAL
MEMBERS:

RUFUS J. TATE, JR., # 56733
The Tate Law Firm, LLC
7751 Carondelet
Suite 803
St. Louis, MO  63105
(314) 726-6495


IT IS SO ORDERED.

DATED: August 14, 2002

THE HONORABLE
United States District Judge

UNITED STATES DISTRICT COURT - EASTERN MISSOURI
INTERNAL RECORD KEEPING

AN ORDER, JUDGMENT OR ENDORSEMENT WAS SCANNED, FAXED AND/OR MAILED TO THE
FOLLOWING INDIVIDUALS ON 08/15/02 by lwilderm
                    4:02cv1235    USA vs Bd of Elec Com for

42:1973gg6 Requirement W/Resp To Admin Of Voter Registration

| | |
|---|---|
| Robert Kengle - | Fax: 202-307-3961 |
| Mark Lawson -  20618 | Fax: 314-622-4956 |
| Joseph Moore -  3889 | Fax: 314-539-2777 |
| Joseph Rich - | Fax: 202-307-3961 |
| Rufus Tate -  56733 | Fax: 314-726-0166 |
| Michael Zwibelman - | Fax: 202-307-3961 |

SCANNED & FAXED BY:
AUG 1 5 2002
C. D. D.